UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
                      :

**DAVID R. MEEKINS, individually and on**  :
**behalf of all others similarly situated,**   :
                      :
        **Plaintiff,**         :
                      :    **OPINION AND ORDER**
                      :
       **- against -**       :    **06 Civ. 6473 (SAS)**
                      :
                      :
**CITY OF NEW YORK, NEW YORK and**   :
**IRIS WEINSHALL, Commissioner of the New** :
**York City Department of Transportation,**  :
                      :
        **Defendants.**      :
------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

David Meekins brings this putative class action on behalf of all
disabled persons who hold disability parking permits issued by a United States
government entity, but who do not qualify for the New York City Special Vehicle
Identification Permit ("Special Vehicle Permit"). Meekins is suing the City of
New York ("the City") and Iris Weinshall, former Commissioner of the New York
City Department of Transportation, claiming that the City's Special Vehicle
Permit policy violates the class's rights under title II of the Americans with

1

Disabilities Act of 1990 ("the ADA"),[1] the Rehabilitation Act of 1973,[2] and

section 1983 of title 42 of the United States Code ("section 1983").[3] Defendants

move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure

12(c). For the following reasons, the motion is granted in part and denied in part.

## II.   BACKGROUND

The Special Vehicle Permit allows its holder to park at expired meters

and in spaces designated only for authorized vehicles.[4] To qualify for this permit,

an applicant must have a severe handicap and must live, work, or attend school in

New York City.[5]

Meekins, a New Jersey resident, suffers from Type I

Neurofibromatosis, a genetic disorder of the nervous system that causes tumors to

grow around the nerves.[6] Because of this disorder, Meekins cannot walk long

---

[1]      42 U.S.C. § 12132 *et seq.*

[2]      29 U.S.C. § 794 *et seq.*

[3]      Count II of Meekins's Complaint also alleges that the City's policy
violates New York State law. *See* Complaint ("Compl.") ¶¶ 41-46. Meekins has
now withdrawn that claim. *See* Plaintiff's Memorandum of Law in Opposition to
Defendants' Motion for Judgment on the Pleadings at 3 n.3.

[4]      *See* Compl. ¶ 5.

[5]      *See id.* ¶ 10; New York City Charter § 2903(a)(15)(a) (2002).

[6]      *See* Compl. ¶ 19.

2

distances and generally depends on a specialized wheelchair for his mobility.[7] He also uses a customized van in order to travel with his wheelchair.[8]

Meekins regularly travels to New York City to receive medical treatment and to pick up prescriptions at Memorial Sloan-Kettering Cancer Center.[9] He also visits New York City to take advantage of some of its many cultural offerings.[10] Meekins holds a New Jersey State disability parking permit,[11] but because he does not live, work, or attend school in New York City, he does not qualify for the City's Special Vehicle Permit. Without a Special Vehicle Permit, Meekins often must pay for private parking. Even then, he encounters difficulties because his customized van is so large that it does not fit into the entrances of some indoor parking garages.[12] And when a private parking facility can accommodate his van, Meekins often pays an extraordinarily high parking fee due

---

7   *See id.* ¶ 23.

8   *See id.* ¶ 24.

9   *See id.* ¶ 22.

10  *See id.* ¶ 29.

11  *See id.* ¶ 26.

12  *See id.* ¶ 25.

3

to the van's size.[13]

Because of these difficulties, Meekins has resorted to parking
illegally and has received parking tickets.[14] Meekins contends that if he had a
Special Vehicle Permit, he would be able to find a suitable parking space and
would not have received any parking tickets.[15]

The putative class includes all disabled persons who have disability
parking permits issued by a United States government entity, but who do not
qualify for the New York City Special Vehicle Permit.[16]

## III. APPLICABLE LAW

### A. Rule 12(c) Motion for Judgment on the Pleadings

A Rule 12(c) motion is governed by the same pleading standard as a
Rule 12(b)(6) motion.[17] "Federal Rule of Civil Procedure 8(a)(2) requires . . . 'a
short and plain statement of the claim showing that the pleader is entitled to

---

[13]   *See id.* ¶ 29.

[14]   *See id.* ¶ 27.

[15]   *See id.* ¶ 30.

[16]   *See id.* ¶ 12.

[17]   *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006)
(citing *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)).

4

relief.'"[18] When deciding a defendant's motion to dismiss under Rule 12(b)(6),

courts must "accept as true all of the factual allegations contained in the

complaint"[19] and "draw all reasonable inferences in plaintiff's favor."[20] Likewise,

when deciding a motion for judgment on the pleadings, a court "must accept all

allegations in the complaint as true and draw all inferences in the non-moving

party's favor."[21]

Nevertheless, to survive a 12(b)(6) motion to dismiss, the allegations

in the complaint must meet the standard of "plausibility."[22] Although the

complaint need not provide "detailed factual allegations,"[23] it must "amplify a

---

[18] *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

[19] *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964 (2007).

[20] *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[21] *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)).

[22] *Twombly*, 127 S. Ct. at 1970.

[23] *Id.* at 1964. *See also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007) (applying the standard of plausibility outside *Twombly*'s anti-trust context) .

5

claim with some factual allegations . . . to render the claim *plausible*."[24]  The test is

no longer whether there is "'no set of facts [that plaintiff could prove] which

would entitle him to relief.'"[25]  Rather, the complaint must provide "the grounds

upon which [the plaintiff's] claim rests through factual allegations sufficient 'to

raise a right to relief above the speculative level.'"[26]

Although this Court must take the plaintiff's allegations as true, "the

claim may still fail as a matter of law . . . if the claim is not legally feasible."[27]  In

addition, "bald assertions and conclusions of law will not suffice."[28]

## B.    ADA and Rehabilitation Act Claims

In Count I of the Complaint, Meekins asserts that the City's policy

---

[24]    *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (holding that the plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after the events of September 11, 2001).

[25]    *Twombly*, 127 S. Ct. at 1968 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[26]    *ATSI Commc'ns*, 493 F.3d at 98 (quoting *Twombly*, 127 S. Ct. at 1965).

[27]    *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006).

[28]    *Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp.*, 309 F.3d 71, 74 (2d Cir. 2002) (quotation omitted).

violates both title II of the ADA[29] and the Rehabilitation Act.[30] These two statutes are not identical, but they are so similar that, "unless one of those subtle distinctions [between the ADA and the Rehabilitation Act] comes into play, we treat claims under those statutes identically."[31] Because none of these distinctions is relevant to this case, the Court will consider the statutes together.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[32] Plaintiffs pleading an ADA claim must show: (1) that "they are qualified individuals with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of

---

[29]  42 U.S.C. § 12132 *et seq.*

[30]  29 U.S.C. § 794 *et seq.*

[31]  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citing *Weixel v. Board of Educ.*, 287 F.3d 138, 146 n. 6 (2d Cir. 2002); *Rodriguez v. City of New York*, 197 F.3d 611, 614 (2d Cir. 1999); *Cercpac v. Health & Hosps. Corp.*, 147 F.3d 165, 167 (2d Cir. 1998)).

[32]  42 U.S.C. § 12132.

7

plaintiffs' disabilities."[33]

## 1. Discrimination

The discrimination element can take any of three forms: 1)
intentional discrimination; 2) disparate impact; or 3) failure to make a reasonable
accommodation.[34] Meekins asserts that the City has failed to make reasonable
accommodations for disabled persons who do not qualify for the Special Vehicle
Permit.[35] When assessing government entities' responsibility under the ADA to
furnish reasonable accommodations for disabled persons, courts have drawn upon
the language of section 41.53 of title 28 of the Code of Federal Regulations, a
federal regulation implementing section 504 of the Rehabilitation Act.[36] That
regulation requires covered entities to "make reasonable accommodation to the
known physical or mental limitations of an otherwise qualified handicapped
applicant or employee unless the recipient can demonstrate that the
accommodation would impose an undue hardship on the operation of its

---

[33]  *Henrietta D.*, 331 F.3d at 272 (citing *Doe v. Pfrommer*, 148 F.3d 73,
82 (2d Cir. 1998)).

[34]  *See Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d
Cir. 2003).

[35]  *See* Compl. ¶¶ 16(a), 32-34.

[36]  *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 606 n.16 (1999).

8

program."[37]

The reasonable accommodation requirement thus places an affirmative burden on government entities to provide disabled persons with access to government services, but a government entity will be relieved of that burden if it can show that a proposed accommodation would be unduly difficult to implement.[38] Consequently, to plead a failure to make a reasonable accommodation, a plaintiff must assert that disabled individuals lack access to a given government resource and suggest a plausible method for remedying that lack of access. A plausible accommodation is one "the costs of which, facially, do not clearly exceed its benefits."[39]

## 2. Causation

If a court finds discrimination under the ADA, it must assess whether that discrimination is "by reason of plaintiffs' disabilities."[40] The Second Circuit has held that, because the ADA is remedial legislation and because "remedial

---

[37] 28 C.F.R. § 41.53 (2002).

[38] *See Powell v. National Bd. of Medical Examiners*, 364 F.3d 79, 85 (2d Cir. 2004).

[39] *Borkowski v. Valley Cent. School Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).

[40] *Henrietta D.*, 331 F.3d at 272.

9

legislation should be construed broadly to effectuate its purposes," the causation standard under the ADA requires only that the disability be a "substantial cause of the exclusion or denial" at issue.[41]

## C. Exhaustion of Remedies

The City argues that because Meekins has not exhausted all available administrative remedies for obtaining a Special Vehicle Permit, this Court must dismiss the Complaint. The doctrine of exhaustion of administrative remedies rests on the principle "'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'"[42] "It is well settled that timely exhaustion of plan remedies is a prerequisite to suit in federal court and that, absent appropriate equitable considerations, court action is barred absent such exhaustion."[43] A claimant is "required to exhaust even if she [i]s ignorant of the proper claims procedure."[44] If

[41]    *Id.* at 279, 291 (citation omitted).

[42]    *Kennedy v. Empire Blue Cross and Blue Shield*, 989 F.2d 588, 592 (2d Cir. 1993) (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)).

[43]    *Sanfilippo v. Provident Life and Cas. Ins. Co.*, 178 F. Supp. 2d 450, 458 (S.D.N.Y. 2002). *Accord Denton v. First Nat'l Bank of Waco, Tex.*, 765 F.2d 1295, 1300 (5th Cir. 1985).

[44]    *Davenport v. Harry N. Abrams, Inc.,* 249 F.3d 130, 134 (2d Cir. 2001).

10

a plaintiff fails to allege that she has exhausted administrative remedies, the claim must be dismissed.[45] Failure to exhaust remedies may be excused on the grounds of futility "only 'where claimants make a *clear and positive showing* that pursuing available administrative remedies would be futile.'"[46]

## D. Section 1983 Claims

Meekins further alleges that the City's Special Vehicle Permit policy violates his constitutional rights under the Commerce Clause[47] and the Privileges and Immunities Clause of Article IV[48] of the United States Constitution, and brings claims for these violations pursuant to section 1983.[49] In order to maintain a section 1983 action, a plaintiff must allege: 1) that the conduct complained of was committed by a person acting under color of state law; and 2) that the conduct complained of deprived him of rights, privileges or immunities secured by the

---

[45] *See Benaim v. HSBC Bank USA*, 94 F. Supp. 2d 518, 519 (S.D.N.Y. 2000).

[46] *Davenport*, 249 F.3d at 133 (quoting *Kennedy*, 989 F.2d at 594).

[47] U.S. Const. Art. I, § 8, cl. 3.

[48] U.S. Const. Art. IV, § 2.

[49] *See* Compl. ¶¶ 47-52.

11

Constitution or laws of the United States.[50]

## 1. Commerce Clause

Meekins alleges that the Special Vehicle Permit policy violates the Commerce Clause of the Constitution because it discriminates against interstate commerce,[51] thus raising a "dormant" Commerce Clause claim. "'The fundamental objective of the dormant Commerce Clause is to 'preserv[e] a national market for competition undisturbed by preferential advantages conferred by a State upon its residents or resident competitors.'"[52] When assessing such a claim, courts first determine whether the challenged law "clearly discriminates against interstate commerce in favor of intrastate commerce, or whether it regulates evenhandedly with only incidental effects on interstate commerce."[53] A law that clearly discriminates against interstate commerce can survive a dormant Commerce Clause attack only if it is "'demonstrably justified by a valid factor

[50]     *See Hayut v. State Univ. of New York*, 352 F.3d 733, 743-44 (2d Cir. 2003) (quotation omitted).

[51]     *See* Compl. ¶ 48.

[52]     *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 47 (2d Cir. 2007) (quoting *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 208 (2d Cir. 2003) (quoting *General Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997))).

[53]     *Id.* (citing *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 217-18 (2d Cir. 2004)).

12

unrelated to economic protectionism,'"[54] whereas a law that only incidentally

burdens interstate commerce is subject to a more permissive balancing test.[55]

The Second Circuit has outlined three ways in which a law can be

clearly discriminatory under the dormant Commerce Clause analysis: (1) "by

discriminating against interstate commerce on its face;" (2) "by harboring a

discriminatory purpose;" and (3) "by discriminating in its effect."[56]

## 2. Privileges and Immunities Clause

The purpose of the Privileges and Immunities Clause is to "prevent[]

a State from discriminating against citizens of other States in favor of its own."[57]

Courts evaluating claims under the Privileges and Immunities Clause must

determine: "(1) whether a State has, in fact, discriminated against out-of-staters

with regard to the privileges and immunities it accords its own citizens, and (2) if

so, whether there is sufficient justification for the discrimination."[58] To satisfy the

---

[54]    *Id.* (quoting *Wyoming v. Oklahoma*, 502 U.S. 437, 454 (1992)).

[55]    *See id.*

[56]    *Id.* at 48.

[57]    *Baldwin v. Fish and Game Comm'n*, 436 U.S. 371, 382 (1978)
(quoting *Hague v. CIO*, 307 U.S. 496, 511 (1939)).

[58]    *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 94 (2d Cir.
2003) (citing *United Bldg. & Constr. Trades Council v. Mayor & Council of
Camden*, 465 U.S. 208, 218-22 (1984)).

13

sufficient justification requirement, a state entity must show that "'(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective.'"[59]

## IV. DISCUSSION

### A. ADA and Rehabilitation Act Claims

Meekins's Complaint states a claim under the ADA. It asserts that he is a qualified individual within the meaning of title II of the ADA.[60] The City, along with the Commissioner of the Department of Transportation, is clearly a "public entity" within the meaning of title II of the ADA and is therefore subject to title II's requirements.[61] Meekins has pled both that the City is discriminating against him and that this discrimination is based on his disability.[62]

### 1. Discrimination

In his Complaint, Meekins claims limited access to parking in New

---

[59]   *Barnard v. Thorstenn*, 489 U.S. 546, 552 (1989) (quoting *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 284 (1985)).

[60]   *See* Compl. ¶ 34.

[61]   *Green v. City of New York*, 465 F.3d 65, 76 (2d Cir. 2006).

[62]   *See* Compl. ¶ 4.

14

York City and, in turn, limited access to some of New York City's institutions, including the Memorial Sloan-Kettering Cancer Center and the Museum of Modern Art.[63] The Complaint proposes that the City could accommodate Meekins by allowing him and other members of the class to park for a limited amount of time in the spaces made available to Special Vehicle Permit holders.[64] The City's ability to implement this proposal without incurring undue costs, however, is an issue that cannot be determined on a motion to dismiss. Accordingly, plaintiff has successfully pled discrimination under a reasonable accommodation theory.[65]

### 2. Causation

Meekins has alleged that his disability is a substantial cause of the difficulties he encounters when attempting to access New York's medical and cultural resources. Because of his disability, Meekins has difficulty putting coins in parking meters and visiting his doctors within the maximum time period

---

[63]     *See id.* ¶¶ 28, 29.

[64]     *See id.* ¶¶ 28, 30.

[65]     The Second Circuit has explained that a plaintiff can sustain a reasonable accommodation claim by suggesting a "'plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'" If a "'plaintiff has done this, she has made out a prima facie showing that a reasonable accommodation is available, and the risk of nonpersuasion falls on the defendant.'" *Henrietta D.*, 331 F.3d at 280 (quoting *Borkowski*, 63 F.3d at 138).

15

allowed for metered parking spaces.[66] Meekins's disability also forces him to use

a wheelchair, which in turn requires that he travel in an extraordinarily large

customized van that does not fit into some of the indoor parking garages in New

York City.[67] The City argues that it is not discriminating on the basis of disability

because it provides parking to disabled individuals who live, work, or study in

New York City and therefore qualify for the Special Vehicle Permit.[68] This

argument, however, ignores the fact that Meekins's disability is clearly a cause of

his lack of access to City services, programs, and institutions.[69] Accordingly,

Meekins has sufficiently pled that his disability is a "substantial cause of [his]

---

[66]    *See* Compl. ¶ 27.

[67]    *See id.* ¶ 29.

[68]    *See* Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings at 9.

[69]    Plaintiff does not need to show discrimination based solely on disability to sustain a claim under the ADA. In *Olmstead*, the challenged state action was the state of Georgia's decision to place mentally disabled patients in isolated institutions instead of community-based programs. The State argued that any discrimination in this case was by reason of limited state funding, not by reason of the plaintiffs' disabilities. The Supreme Court rejected the state's argument, insisting that the plaintiffs' disabilities were a cause of their exclusion: "In order to receive needed medical services, persons with mental disabilities must, because of those disabilities, relinquish participation in community life they could enjoy given reasonable accommodations, while persons without mental disabilities can receive the medical services they need without similar sacrifice." *Olmstead*, 527 U.S. at 601.

16

exclusion" from City services, programs, and institutions.[70] Meekins has stated
reasonable accommodation claims under both the ADA and the Rehabilitation Act.

## B.     Exhaustion of Remedies

There is no question that had Meekins applied for a Special Vehicle
Permit the City would have rejected his request.  Section 2903(a)(15)(a) of the
New York City Charter provides that Special Vehicle Permits are to be issued to
"a New York city resident who requires the use of a private automobile for
transportation and to a non-resident who requires the use of a private automobile
for transportation to a school in which such applicant is enrolled or to a place of
employment."[71] Meekins is not a New York City resident and he neither works
nor attends school in New York City.  Because it is beyond cavil that Meekins
cannot satisfy the requirements set forth in the City Charter, applying for the
Special Vehicle Permit would be futile.  Thus, plaintiff is deemed to have
exhausted available remedies.

---

[70]     *Henrietta D.*, 331 F.3d at 291 (employing a broader "substantial
cause" analysis regarding the ADA and Rehabilitation Act and holding that a
plaintiff "suing under the ADA or Rehabilitation Act may show that he or she has
been excluded from or denied the benefits of a public entity's services or programs
by reason of such disability even if there are other contributory causes for the
exclusion or denial, as long as . . . the disability was a substantial cause of the
exclusion or denial").

[71]     New York City Charter § 2903(a)(15)(a).

17

## C.  Section 1983 Claims

As an initial matter, the requirement that defendants sued under
section 1983 must act under color of state law is met. As the Second Circuit
recently explained, the Supreme Court's decision in *Monell v. Department of
Social Services* extended section 1983 "liability to a municipal organization where
that organization's . . . policies . . . led to an independent constitutional
violation."[72] Thus, the only remaining question is whether the City's Special
Vehicle Permit program deprived Meekins of a constitutional right, privilege or
immunity.

### 1.  Commerce Clause

Meekins alleges that the City's Special Vehicle Permit program
violates the dormant Commerce Clause because it is discriminatory "in its
practical effect."[73] Even if the Special Vehicle Permit program is clearly
discriminatory, it does not violate the dormant Commerce Clause. The City has
compelling reasons for favoring those who live, work, or attend school in New
York City over those who do not. The Second Circuit, evaluating the Special

---

[72]  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing
*Monell v. Department of Soc. Servs.*, 436 U.S. 658 (1978)).

[73]  Compl. ¶ 48.

18

Vehicle Permit program in the context of a Privileges and Immunities Clause

claim, explained:

> The limited number of on-street parking spaces justifies the
> regulatory scheme established by the City. It is not
> irrational to give the scarcest parking spaces to those who
> are severely handicapped and who live or conduct business
> in the City, while granting others, who are either less
> severely disabled or whose need for parking is less
> frequently pressing, access to parking that while still
> preferential, is not in as short supply.[74]

In essence, the Second Circuit has already held that the Special Vehicle Permit

program is "demonstrably justified by a valid factor unrelated to economic

protectionism."[75] Accordingly, Meekins's Commerce Clause claim is dismissed.

## 2. Privileges and Immunities Clause

In an earlier lawsuit involving the City's Special Vehicle Permit

program, *Lai v. New York City Government*, the Second Circuit expressly declined

to reach the issue of whether parking could constitute a fundamental right so as to

---

[74]  *Lai v. New York City Gov't*, 163 F.3d 729, 731 (2d Cir. 1998)
(affirming the lower court's grant of summary judgment for the City on claims
arising out of the ADA, the Privileges and Immunities Clause, and the Equal
Protection Clause of the Constitution). While *Lai* controls the analysis under the
Privileges and Immunities Clause, it does not reflect current law regarding the
ADA because it was decided prior to the Second Circuit's expansion of the
causation analysis in *Henrietta D*.

[75]  *Town of Southold*, 477 F.3d at 47 (citing *Wyoming v. Oklahoma*, 502
U.S. at 454).

fall within the protection of the Privileges and Immunities Clause.[76] Instead, the *Lai* Court considered the City's justifications for the Special Vehicle Permit program and concluded that "[i]t is enough to note that the City's decision to give special parking privileges to those with the most pressing needs – severely handicapped City residents and nonresidents who work or study in the City – is reasonable and that [the City's parking system] substantially relates to the City's policy goals."[77]

The *Lai* Court evaluated the Special Vehicle Permit program at the summary judgment stage. Although the instant decision addresses a motion for judgment on the pleadings, the City's policies have not changed in any way relevant to the Privileges and Immunities Clause since the *Lai* decision. As a result, the *Lai* Court's Privileges and Immunities Clause analysis applies to the instant case. The City's Special Vehicle Permit program satisfies the "sufficient justification" test under the Privileges and Immunities Clause because the City "'has a substantial reason for the difference in treatment'" and "'the discrimination practiced against nonresidents bears a substantial relationship to the State's

---

[76]     *See Lai*, 163 F.3d at 731 ("it is not necessary in this case to say that special parking for the handicapped can *never* qualify as a fundamental privilege protected by the Privileges and Immunities Clause").

[77]     *Id.*

20

objective.'"[78] Thus, plaintiff's Privileges and Immunities Clause claim must be dismissed.

## V.    CONCLUSION

For the reasons discussed above, defendants' motion for judgment on the pleadings is granted with respect to plaintiff's section 1983 claims; it is denied with respect to plaintiff's ADA and Rehabilitation Act claims. The Clerk of the Court is directed to close this motion [Document #9]. A conference is scheduled for November 19, 2007, at 4:30 p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          November 6, 2007

---

[78]    *Barnard*, 489 U.S. at 552 (quoting *Piper*, 470 U.S. at 284).

- **Appearances** -

**For Plaintiff:**

William R. Weinstein, Esq.
Sanford Wittels & Heisler, LLP
950 Third Avenue, 10th Floor
New York, New York 10022
(646) 723-2451

**For Defendants:**

Sherill Kurland
Assistant Corporation Counsel
100 Church Street, Room 5-167
New York, New York 10007
(212) 788-0821