UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X
                                                       :
DANIEL FLORIO, individually and                        :
on behalf of all others similarly situated,            :
                                                       :
                              Plaintiff,               :
                                                       :     **OPINION AND ORDER**
              - against -                              :
                                                       :     06 Civ. 6473 (SAS)
CITY OF NEW YORK, NEW YORK                             :
and JEANETTE SADIK-KAHN,                               :
Commissioner of the New York City                      :
Department of Transportation,                          :
                                                       :
                              Defendants.              :
------------------------------------------------------ X



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Daniel Florio brings this putative class action suit on behalf of all mobility disabled persons who qualify for disabled parking permits issued by a government entity subject to the laws of the United States, but who are ineligible for the New York City Special Vehicle Identification Permit ("Special Vehicle Permit"). Florio is suing under the Americans with Disabilities Act of 1990

1

("ADA")[1] and the Rehabilitation Act of 1973.[2] The City of New York now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the following reasons, the motion is denied.

## II. BACKGROUND

### A. New York City's Special Vehicle Permit Policy

The City of New York distributes Special Vehicle Permits to those individuals who have a permanent disability seriously impairing mobility and who either live, work or attend school in New York City.[3] Special Vehicle Permit holders can park anywhere on the City's streets, except in bus stops, taxi-stands, within fifteen feet of a fire hydrant, fire zones, driveways, crosswalks, no-stopping and no-standing zones, and cannot double park.[4]

### B. Procedural History

This case was originally brought by David Meekins, a disabled man from New Jersey. Meekins' suit against the City of New York made substantially the same claim that Florio now makes: that the City's Special Vehicle Permit

---

[1] 42 U.S.C. § 12132 *et seq.*

[2] 29 U.S.C. § 794 *et seq.*

[3] *See* New York City Charter § 2903(a)(15)(a).

[4] *See id.* § 2903(a)(15)(b).

2

program violates the ADA and the Rehabilitation Act of 1973 by discriminating against disabled individuals who do not live, work, or attend school in New York City.[5] Meekins also claimed that the City's policy violated the Commerce Clause and the Privileges and Immunities Clause of the Constitution.[6] In Meekins' case, as here, the City moved for judgment on the pleadings pursuant to Rule 12(c).[7] In an opinion issued November 6, 2007, this Court granted the City's motion with respect to both constitutional claims, but denied it with respect to the ADA claim.[8]

After the 12(c) decision, Meekins withdrew from the suit and was

---

[5] *See Meekins v. City of New York*, 524 F. Supp. 2d 402, 404 (S.D.N.Y. 2007). Meekins originally filed his suit as a "related case" to *Lai v. New York City Government*, 991 F. Supp. 362 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 729 (2d Cir. 1998). In that case, a disabled woman with a New Jersey disability parking permit sued the City under the ADA for not extending its Special Vehicle Permit program to non-residents. This Court held that Lai failed to state a claim under the ADA because she claimed that the City was discriminating against handicapped people based on their residency as opposed to their disabilities. *See id.* at 364. *Lai* is no longer current law with respect to the ADA because an intervening decision by the Second Circuit altered the causation analysis with respect to ADA claims. *See Meekins*, 524 F. Supp. 2d at 411 n.74 (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 291 (2d Cir. 2003) (holding that a defendant violates the ADA when a disability is a "substantial cause" of exclusion from a public entity's services or programs)).

[6] *See Meekins*, 524 F. Supp. 2d at 408.

[7] *See id.* at 404.

[8] *See id.* at 412.

replaced by Florio.[9] Like Meekins, Florio filed a class action complaint alleging that the City's Special Vehicle Permit policy violates the ADA and the Rehabilitation Act.[10] After answering Florio's complaint, the City again moved for judgment on the pleadings pursuant to Rule 12(c).

### C. Facts

The facts concerning Florio are similar to those concerning Meekins. Meekins used a specialized wheelchair and transported that wheelchair in a customized van.[11] Meekins regularly traveled to New York City for scheduled medical appointments, as well as to enjoy many of the City's cultural offerings.[12] While Meekins held a New Jersey disability parking permit, he was ineligible for a Special Vehicle Permit because he did not live, work, or attend school in New York City.[13] As a result, Meekins had to either park his van illegally or pay

---

[9] Daniel Florio was substituted for David Meekins by an amended complaint, which was filed on December 7, 2007. *See* Amended Class Action Complaint. The complaint was amended again on April 2, 2008 before the City moved for judgment on the pleadings. *See* Second Amended Class Action Complaint ("Compl.").

[10] *See* Compl. ¶¶ 38-46.

[11] *See Meekins*, 524 F. Supp. 2d at 404-05.

[12] *See id.* at 405.

[13] *See id.*

4

extraordinarily high parking rates at the garages that could accommodate the oversize van.[14] Meekins sued on behalf of "all disabled persons who have disability parking permits issued by a United States government entity, but who do not qualify for the New York City Special Vehicle Permit."[15]

Florio is also a disabled man from New Jersey who uses a specialized wheelchair and travels with a customized van.[16] Florio has a New Jersey disability parking permit, but is ineligible for the City's Special Vehicle Permit because he neither lives, works, nor attends school in New York City.[17] Like Meekins, Florio has great difficulty parking his van in private garages, parking on the street, or arranging alternate means of transportation to New York City.[18] Florio's motorized wheelchair is unable to negotiate the steep entrance ramps of most parking garages in New York City and does not fit in most of the City's taxis and buses.[19] Further, New York and New Jersey Paratransit services are "impractical

---

[14] *See id.*

[15] *Id.*

[16] *See* Compl. ¶¶ 24-25.

[17] *See id.* ¶¶ 29-30.

[18] *See id.* ¶¶ 27-31.

[19] *See id.* ¶¶ 27-29.

5

and unfeasible" for Florio's trips to New York City because of their "wide advanced scheduling windows" and limited availability in poor weather.[20] Unlike Meekins, Florio does not regularly visit New York City for any scheduled medical appointments,[21] and instead claims that the lack of a Special Vehicle Permit impedes his ability to "come to New York City regularly for professional as well as cultural, educational and commercial purposes."[22] Specifically, Florio is unable to visit the Museum of Modern Art, where he is a member, "as regularly as he would like."[23] Florio, who is an attorney in New Jersey, also visits New York to assist his aunt, who practices family law, and anticipates searching for a legal job in New York City at some point in the future.[24] Florio regularly visited New York City for scheduled medical appointments in the past, and anticipates having future medical appointments in the City, though he concedes that he "has not recently traveled to New York City on a regular basis for medical care."[25]

---

[20] *Id.* ¶ 29.

[21] *See id.* ¶ 36.

[22] *Id.* ¶ 32(a).

[23] *Id.* ¶ 32(b).

[24] *See id.* ¶¶ 34-35.

[25] *Id.* ¶ 36.

## III. LEGAL STANDARD

The pleading standard for a Rule 12(c) motion is identical to that of a 12(b)(6) motion.[26] Under the standard of review for a 12(b)(6) motion to dismiss, the court must "accept as true all of the factual allegations contained in the complaint,"[27] and "draw all reasonable inferences in plaintiff's favor."[28] Similarly, when deciding a 12(c) motion for judgment on the pleadings, the court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."[29] "The court [must] not dismiss the case unless it is satisfied that the complaint cannot state any set of facts that would entitle [the plaintiff] to relief."[30]

To withstand a 12(c) motion for judgment on the pleadings, a

---

[26] *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (citing *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)).

[27] *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1975 (2007) (quotations marks omitted).

[28] *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[29] *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citing *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998)).

[30] *Id.* (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)).

7

complaint must meet a standard of plausibility.[31] Although the complaint need not provide "detailed factual allegations,"[32] it must "amplify a claim with some factual allegations . . . to render the claim plausible."[33] The Supreme Court has abandoned its former standard that a complaint can only be dismissed if there is "'no set of facts [that plaintiff could prove] which would entitle him to relief,'"[34] and instead reaffirmed that a complaint must "raise a right to relief above the speculative level."[35] Although the court must take the plaintiff's allegations as true, the court must also "'assess the legal feasibility of the complaint.'"[36] "'[B]ald

---

[31] *See Twombly*, 127 S. Ct. at 1970.

[32] *Id.* at 1964. *See also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007) (applying the standard of plausibility outside *Twombly*'s anti-trust context).

[33] *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (holding that the plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after the events of September 11, 2001).

[34] *Twombly*, 127 S. Ct. at 1968-69 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)) ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.").

[35] *Id.* at 1965.

[36] *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (quoting

8

assertions and conclusions of law will not suffice.'"[37]

## IV. APPLICABLE LAW

### A. The Americans With Disabilities Act and Rehabilitation Act

The Complaint alleges that the Special Vehicle Permit policy violates both title II of the ADA and the Rehabilitation Act.[38] While the two statutes are not identical, they are sufficiently similar that "unless one of those subtle distinctions [between the ADA and the Rehabilitation Act] is pertinent to a particular case, we treat claims under the two statutes identically."[39] As was the case in *Meekins*, none of those distinctions is relevant to this case, and the Court will consider the claims under both statutes together.[40]

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or

---

        *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984)).

[37]   *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 132 (2d Cir. 2007) (quoting *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)).

[38]   *See* Compl. ¶¶ 38-46.

[39]   *Henrietta D.*, 331 F.3d at 272 (citing *Weixel v. Board of Educ.*, 287 F.3d 138, 146 n. 6 (2d Cir. 2002)). *Accord Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1999); *Lincoln CERCPAC v. Health & Hosps. Corp.*, 147 F.3d 165, 167 (2d Cir. 1998)).

[40]   *See Meekins*, 524 F. Supp. 2d at 406.

9

be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[41] To successfully plead an ADA claim, plaintiffs must establish three elements: *first*, that they are qualified individuals with a disability; *second*, that the defendant is subject to the ADA; and *third*, that the plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of their disabilities.[42]

### 1. Discrimination

The discrimination element can take any of three forms: 1) intentional discrimination; 2) disparate impact; or 3) failure to reasonably accommodate a disabled person.[43] Like Meekins, Florio alleges that the City failed to reasonably accommodate disabled individuals who do not qualify for a Special Vehicle Permit.[44] As this Court noted in *Meekins*, courts look to section 41.53 of title 28

---

[41] 42 U.S.C. § 12132.

[42] *See Henrietta D.*, 331 F.3d at 272 (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)).

[43] *See Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003).

[44] *See* Compl. ¶ 37(a) ("[B]arriers [to access to New York City's resources] present themselves to [plaintiff and] all other similarly disabled persons, regardless of residency or former residency, by reason of their disabilities and defendants' complete . . . refusal to

10

of the Code of Federal Regulations to assess what duty governments have to furnish reasonable accommodations to disabled individuals.[45] That regulation requires covered public entities to "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the [public entity] can demonstrate that the accommodation would impose an undue hardship on the operation of its program."[46]

Government entities thus have an affirmative burden to provide disabled persons with access to government services unless the government can show that a potential accommodation would be unduly difficult to implement.[47] To successfully plead a claim of failure to reasonably accommodate, a plaintiff must assert that disabled individuals lack access to a given government resource and also suggest a plausible method for remedying that lack of access.[48] A plausible accommodation is one "'the costs of which, facially, do not clearly

---

provide them with any accommodation whatsoever.").

[45] *See Meekins*, 524 F. Supp. 2d at 407 (citing *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 606 n.16 (1999)).

[46] 28 C.F.R. § 41.53.

[47] *See Powell v. National Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004) (quoting *Henrietta D.*, 331 F.3d at 273).

[48] *See Meekins*, 524 F. Supp. 2d at 407. *See also Henrietta D.*, 331 F.3d at 280.

exceed its benefits.'"⁴⁹

### 2. Causation

If a court finds discrimination under the ADA, it must then assess whether that discrimination is "by reason of plaintiffs' disabilities."⁵⁰ Because the ADA is remedial legislation and because "'remedial legislation should be construed broadly to effectuate its purposes,'" the Second Circuit does not require that a plaintiff's disability be the sole cause of the discrimination.⁵¹ Accordingly, "a plaintiff with disabilities suing under the ADA or Rehabilitation Act may show that he or she has been excluded from or denied the benefits of a public entity's services or programs by reason of such disability even if there are other contributory causes for the exclusion or denial, as long as the plaintiff can show that the disability was a substantial cause of the exclusion or denial."⁵²

---

⁴⁹ *Henrietta D.*, 331 F.3d at 280 (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995)).

⁵⁰ *Id.* at 272.

⁵¹ *Id.* at 279 (quoting *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967)).

⁵² *Id.* at 291(quotation marks omitted). The Supreme Court has also held that a person's disability need not be the sole reason for the discrimination to support an ADA claim. In *Olmstead v. L.C. ex rel. Zimring*, the state of Georgia defended its policy of isolating mentally disabled patients in institutions, rather than community-based programs, by arguing that the policy was based on limited state funding. The Court rejected this argument, holding that the Georgia

12

## V. DISCUSSION

Florio's complaint states a cognizable claim under the ADA and Rehabilitation Acts for discrimination by failure to reasonably accommodate.[53] Florio meets the first element of a claim under title II of the ADA by asserting that he is a disabled individual within the meaning of the statute.[54] Florio also satisfies the second element of the pleading standard, as New York City and the Commissioner of the Department of Transportation are "clearly public entit[ies] within the meaning of title II of the ADA."[55] For the reasons stated below, Florio has also successfully pled that the City's Special Vehicle Permit policy

---

program discriminated by reason of the plaintiffs' disability because "[i]n order to receive needed medical services, persons with mental disabilities must, *because of those disabilities*, relinquish participation in community life they could enjoy given reasonable accommodations, while persons without mental disabilities can receive the medical services they need without similar sacrifice." *Olmstead*, 527 U.S. at 601 (emphasis added).

[53] In its briefs, the City restates, nearly verbatim, three arguments it made in its briefs in *Meekins* as to why the Special Vehicle Permit program does not violate the ADA. *See* Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings ("Def. Mem.") at 11-19. The ruling in *Meekins* is the law of the case. Thus, I will only consider the City's argument that Florio failed to state a claim for failure to reasonably accommodate his disability.

[54] *See* Compl. ¶ 11.

[55] *Meekins*, 542 F. Supp. 2d at 409 (quotation marks omitted).

discriminates against him, and that such discrimination is by reason of his disability.

## A. Discrimination

Florio claims that the Special Vehicle Permit program limits his access to public parking, and by extension, his access to New York City's cultural and economic resources. Florio proposes that the City could reasonably accommodate him and others similarly situated by instituting "a more restricted version of the Special Vehicle Identification Permit for weekday parking, and some limited number of designated 'blue spaces' reserved for the severely mobility-disabled at night and on weekends when the City's most pressing parking demands are no longer present."[56] Meekins, in his complaint, made a similar proposal that the City could "allow[] him and other members of the class to park for a limited amount of time in the spaces made available to Special Vehicle Permit holders."[57] In that case, this Court held that "[t]he City's ability to implement [Meekins'] proposal without incurring undue costs . . . is an issue that cannot be determined on a motion to dismiss."[58]

---

[56] Compl. ¶ 37(b).

[57] *Meekins*, 524 F. Supp. 2d at 409.

[58] *Id.*

14

*Meekins'* holding that the City's ability to make a proposed accommodation was not an issue for judgment on the pleadings squarely controls this motion as well. In its moving papers, the City points to a number of factual distinctions between the cases of Meekins and Florio – chiefly that Florio does not have medical appointments in New York and thus has no need to visit New York City "regularly," and that it is not "wholly unfeasible" for Florio to travel into New York City and park in a private garage.[59] The City fails, however, to do anything more than note these factual distinctions – it does not cite to any precedent, statute, or regulation that compels a result different from the one reached by this Court in *Meekins*. Notwithstanding the significance of any of the offered factual distinctions, it remains the case that, as in *Meekins*, the issue of the City's ability to make Florio's proposed accommodation is not one that can be resolved in a motion for judgment on the pleadings or a motion to dismiss. Accordingly, Florio has successfully pled the discrimination element of an ADA claim.

**B.     Causation**

Similarly, the factual distinctions that the City highlights are not sufficient to distinguish the holding in *Meekins* as to the causation element. In

---

[59]     Def. Mem. at 21-22.

15

*Meekins*, this Court noted that "because of his disability, Meekins has difficulty putting coins in parking meters," and that his "disability also forces him to use a wheelchair, which in turn requires that he travel in an extraordinarily large customized van that does not fit into some of the indoor parking garages in New York City."[60] This Court concluded that Meekins' complaint satisfied the causation element of an ADA claim because "Meekins' disability is clearly a cause of his lack of access to City services, programs, and institutions."[61]

While the difficulties Florio faces are slightly different from those Meekins faced – Florio claims that his wheelchair cannot negotiate the entrance ramps of most parking garages, while Meekins claimed that his van did not fit in most parking garages – the causation element of Florio's claim is not legally distinct from Meekins' successful allegation of causation. Whatever the other reasons the City may have for instituting the Special Vehicle Permit program and applying it only to residents and those who work or go to school in the City, Florio's "disability is clearly a cause of his lack of access to City services, programs, and institutions."[62]

---

[60] *Meekins*, 524 F. Supp. 2d at 410.

[61] *Id.*

[62] *Id.*

16

## VI. CONCLUSION

For the foregoing reasons, defendants' motion is denied. The Clerk of the Court is directed to close this motion (docket # 28).[63]

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
July 21, 2008

---

[63] The plaintiff's brief asserts that the City violated Federal Rule of Civil Procedure 11 because the City's reliance on an affidavit referred to in the complaint for a factual rebuttal of Florio's claims was "frivolous" and "sanctionable." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Judgment on the Pleadings, 23-24. However, Rule 11(c)(2) requires that "[a] motion for sanctions must be made separately from any other motion." Accordingly, I will not address plaintiff's request for sanctions.

17

## -Appearances-

**Counsel for Plaintiff:**

William R. Weinstein, Esq.
Sanford, Wittels & Heisler, LLP
950 Third Avenue, 10th Floor
New York, NY 10022
Telephone: (646) 723-2451

**Counsel for Defendants:**

Sherrill Kurland
Assistant Corporation Counsel
100 Church Street, Room 5-167
New York, NY 10007
Telephone: (212) 788-0821